UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 09-60635-Civ-MORENO
MAGISTRATE JUDGE P. A. WHITE

LARRY JAMES BARBER,                :

           Plaintiff,             :

v.                                :        REPORT OF
                                           MAGISTRATE JUDGE
COMMANDER JOHN DOE, et al.,        :

           Defendants.            :
_____

Introduction

On April 28, 2009, the plaintiff, Larry James Barber, a state prisoner confined at Okeechobee Correctional Institution, filed a pro se civil rights complaint pursuant to 42 U.S.C. §1983 (DE#1) against 13 defendants. Specifically, he alleges that on May 25, 2007, he was in an automobile accident with Robert Weisz, resulting in injuries, with pain and suffering. He further alleges that various individuals were guilty of several infractions, including operating a vehicle in a negligent manner, negligently leaving a vehicle parked on the side of the road, failing to notify insurance company of accident, failing to maintain insurance information for a vehicle, and failing to inform plaintiff of any intent to sell his vehicle and refusing to release his vehicle on weekends and holidays in violation of state law. He further asserts that various individuals, working under the color of state law, were responsible for maliciously prosecuting and falsely arresting him for Driving Under the Influence. (DUI).

However, for the reasons expressed in the undersigned's

1

preliminary report (DE#16), which was subsequently adopted by the District Court (DE#25), all of the named defendants, except for Steven M. Vershel, a State Trooper with the Florida Highway Patrol (Vershel); Angela Botero (Botero), a processor at the DUI unit; and Patricial Nanz (Nanz), a breath alcohol technician/agency inspector, were dismissed from this lawsuit. Barber named Vershel in his individual capacity, but named Botero and Nanz in both, their individual and official capacities. (DE#1:3d-3g).

The gravamen of Barber's complaint is that officers falsely arrested him and fabricated evidence against him to maliciously prosecute him for charges of driving under the influence.

Specifically, Barber alleges that Vershel failed to preserve exculpatory trial evidence, fabricated the official reports of the accident and criminal investigation to support a false arrest, and maliciously prosecuted him for driving under the influence. Barber stated that he was not under the influence of drugs or alcohol at the time of the accident, and in support thereof he states that on December 5, 2007, he was found not guilty of all DUI charges. (DE#1).

Moreover, Barber claims Botero failed to properly administer a video DUI examination on an approved instrument, and fabricated a report to manufacture probable cause. Upon her testimony at the November 29, 2007 suppression hearing, the readings from the unapproved breath testing instrument were found to be unreliable and were suppressed by the court. (DE#1).

Likewise, he alleges Nanz failed to properly inspect the breath test instrument when she failed to include the new expiration date and approved the instrument for testing. Barber

claims she knowingly and intentionally fabricated unreliable instrument readings and reported facts to manufacture probable cause.

As previously indicated, a preliminary report was entered (DE#16) recommending that the complaint proceed as to Vershel, Botero and Nanz as to the claim for malicious prosecution and false arrest, and that it be dismissed as to all other defendants. Subsequent to Barber's objections thereto (DE#21), the district court entered an order adopting the report. Barber was then permitted to proceed in forma pauperis, to the extent he need not prepay the costs and fees, but rather pay the filing fee by installment, and service was ordered and effectuated on the remaining defendants. (DE#s13,23,24,30).

This Cause is now before the Court upon the defendants' respective Motions for Summary Judgment with attached affidavits and exhibits (DE#s60,61) and statement of undisputed facts in support of Defendants Botero and Nanz. (DE#62). On June 4, 2010, Barber was advised of his right to respond to both motions. (DE#64). As of the filing of this Report, Barber filed a document entitled "Supplemental Response to Defendant's Summary Judgment" (DE#73); however, the court docket reveals an initial response was never filed. As such, Barber's supplemental response will be utilized.

<u>Summary Judgment Standard</u>

On a motion for summary judgment, this court must evaluate the record in the light most favorable to the plaintiff, as the nonmoving party, and grant defendants' motion only if the record demonstrates that there is no genuine issue of material fact and

that defendant is entitled to judgment as a matter of law. <u>See</u>
<u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322 (1986); <u>Lee v. Ferraro</u>,
284 F.3d 1188, 1190 (11th Cir. 2002); Fed.R.Civ.Pro.56.

The court must resolve all disputes and draw all inferences in
the nonmovant's favor. <u>Anderson v. Liberty Lobby, Inc</u>. 477 U.S.
242, 255 (1986); <u>Burger King Corp. v. Weaver</u>, 169 F.3d 1310, 1315
(11th Cir. 1999). Summary judgment is improper "[i]f a reasonable
fact finder could draw more than one inference from the facts, and
that inference creates a genuine issue of material fact." <u>Cornelius
v. Highland Lake</u>, 880 F.2d 348, 351 (11th Cir. 1989), cert. den'd,
494 U.S. 1066 (1990). An issue of fact is "material" if it might
affect the outcome of the case under the governing law. <u>Anderson v.
Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986). It is "genuine" if
the record taken as a whole could lead a rational trier of fact to
find for the non-moving party. <u>Id.</u>; <u>see also</u>, <u>Matsushita Electric
Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 586 (1986).
Finally, it is improper for the court to make credibility
determinations on a motion for summary judgment. <u>Miller v. Harget</u>,
458 F.3d 1251, 1256 (11th Cir. 2006); <u>Bischoff v. Osceola County</u>,
222 F.3d 874, 876 (11th Cir. 2000); <u>Harris v. Ostrout</u>, 65 F.3d 912,
916-17 (11th Cir. 1995); <u>Perry v. Thompson</u>, 786 F.2d 1093, 1095
(11th Cir. 1986); <u>Rollins v. TechSouth, Inc.</u>, 833 F.2d 1525, 1531
(11th Cir. 1987).

If the party seeking summary judgment meets the initial burden
of demonstrating the absence of a genuine issue of material fact,
as the defendants have in this case, the burden then shifts to the
nonmoving party, in this case the plaintiff, to come forward with
sufficient evidence to rebut this showing with affidavits or other
relevant and admissible evidence. <u>Avirgan v. Hull</u>, 932 F.2d 1572,
1577 (11th Cir.), cert. denied, 502 U.S. 1048 (1992). It is the

nonmoving party's burden to come forward with evidence on each essential element of his claim sufficient to sustain a jury verdict. <u>Earley v. Champion International Corp.</u>, 907 F.2d 1077, 1080 (11th Cir. 1990).

The non-moving party, even a <u>pro se</u> prisoner, cannot rely solely on his complaint and other initial pleadings to contest a motion for summary judgment supported by evidentiary material, but must respond with affidavits, depositions, or otherwise to show that there are material issues of fact which require a trial Fed.R.Civ.P. 56(e); <u>Coleman v. Smith</u>, 828 F.2d 714 (11th Cir. 1987); <u>Brown v. Shinbaum</u>, 828 F.2d 707 (11th Cir. 1987). If the evidence presented by the nonmoving party is merely colorable, or is not significantly probative, summary judgment may be granted. <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 249-50 (1986); <u>Baldwin County, Alabama v. Purcell Corp.</u>, 971 F.2d 1558 (11th Cir. 1992). "A mere 'scintilla' of evidence supporting the opposing party's position will not suffice; there must be enough of a showing that the jury could reasonably find for that party." <u>Walker v. Darby</u>, 911 F.2d 1573, 1577 (11th Cir. 1990)(<u>citing</u> <u>Anderson v. Libery Lobby, Inc.</u>, <u>supra</u>.).

Despite the liberality with which courts are obliged to interpret <u>pro se</u> complaints, "a pro se litigant does not escape the essential burden under summary judgment standards of establishing that there is a genuine issue as to a fact material to his case in order to avert summary judgment." <u>Brown v. Crawford</u>, 906 F.2d 667, 670 (11th Cir. 1990), cert. denied, 500 U.S. 933 (1991).

Pursuant to <u>Brown v. Singletary</u>, 828 F.2d 707 (11th Cir. 1987), an Order was entered informing the <u>pro se</u> plaintiff of his right to respond to the defendants' summary judgment motion, and

5

instructing him regarding the requirements under Fed.R.Civ.P. 56 for a proper response to such a motion. Barber filed a response and attached thereto, he included an affidavit, signed under penalty of perjury, in attempts to meet his burden and rebut the defendants' allegations. (DE#73).

Law Pertaining to Probable Cause,
False Arrest, and Qualified Immunity

A warrantless arrest without probable cause violates a person's constitutionally protected liberty interest, and forms the basis for a section 1983 claim, Marx v. Gumbinner, 950 F.2d 1503, 1505-06 (11th Cir. 1990); Motes v. Meyers, 810 F.2d 1055 (11th Cir. 1987). In addition, allegations of malicious prosecution, including allegations that an officer knowingly made false statements to obtain an arrest warrant can constitute a violation of the Fourth Amendment. The Eleventh Circuit noted in Whiting v. Traylor, 85 F.3d 581, 584 (11th Cir.1996): "[L]abeling . . . a section 1983 claim as one for a 'malicious prosecution' can be a shorthand way of describing a kind of legitimate section 1983 claim: the kind of claim where the plaintiff, as part of the commencement of a criminal proceeding, has been unlawfully and forcibly restrained in violation of the Fourth Amendment and injuries, due to that seizure, follow as the prosecution goes ahead." Cf. U.S. Steel, LLC v. Tieco, Inc., 261 F.3d 1275, 1290 (11th Cir.2001). The Whiting Court noted that "we think referring to a federal 'right' to be free from malicious prosecution is actually a description of the right to be free from an unlawful seizure which is part of a prosecution." Whiting at 584 n.4.

The Constitution does not guarantee that only the guilty will be arrested, Baker v. McCollan, 443 U.S. l37 (1979), and the

existence of probable cause is an absolute bar to a section 1983 action for false arrest, Marx v. Gumbinner, supra, 950 F.2d at 1506, and cases cited therein.  Moreover, the fact that an arrested individual is ultimately acquitted, or charges against him are dropped, is of no consequence in determining the validity of the arrest. Marx, supra, 950 F.2d at 1507; Mills v. Town of Davie, 48 F.Supp.2d 1378, 1380.  Probable Cause "requires more than mere suspicion, but does not require convincing proof." Bailey v. Board of County Commiss'rs of Alachua County, 956 F.2d 1112, 1120 (11th Cir. 1992). See also Rankin v. Evans, 133 F.3d 1425, 1435 (11th Cir. 1998) (quoting State v. Scott, 641 So.2d 517, 519 (Fla. 3d DCA. 1994) ("The facts necessary to establish probable cause need not reach the standard of conclusiveness and probability as to the facts necessary to support a conviction")).

The definition of probable cause is well established, see, e.g., United States v. Elsoffer 671 F.2d 775 (11th Cir. 1982), and it has been long recognized that probable cause to arrest exists where the facts and circumstances within an arresting officer's knowledge, and of which he had reasonably trustworthy information, are sufficient for a man of reasonable caution to believe that an offense has been or is being committed. Hunter v. Bryant, 502 U.S. 224, 229 (1991); Draper v. United States, 358 U.S. 307, 311 (1959); United States v. Herzburn, 723 F.2d 773, 775 (11th Cir. 1984); United States v. Kye Soo Lee, 962 F.2d 430, 435 (5th Cir. 1992). The validity of an arrest is not vitiated, and an arresting officer is not stripped of entitlement to qualified immunity on a claim of false arrest so long as there was probable cause to arrest for some offense. See Lee v. Ferraro, 284 F.3d 1188, 1195-96 (11th Cir. 2002) (validity of an arrest does not turn on whether the offense for which there was probable cause was announced to the individual at the time of his/her arrest, nor does it turn on whether the

7

offense was cited in the officer's arrest report); <u>Stachel v. City of Cape Canaveral</u>, 51 F.Supp.2d 1326, 1331 (M.D.Fla. 1999) ("The claim for false arrest does not cast its primary focus on the validity of each individual charge; instead we focus on the validity of the arrest. If there is probable cause for any of the charges made . . . then the arrest was supported by probable cause, and the claim for false arrest fails") (<u>quoting</u> <u>Wells v. Bonner</u>, 45 F.3d 90, 95 (5th Cir. 1995)).

Moreover, the existence of circumstances in which an arresting officer has only arguable probable cause, if not actual probable cause, is sufficient for a defendant officer to be entitled to qualified immunity. <u>See</u> <u>Lee v. Ferraro</u>, 284 F.3d 1188, 1195 (11th Cir.2002); <u>Scarborough v. Myles</u>, 245 F.3d 1299, 1302 (11th Cir.2001). Arguable probable cause exists where reasonable officers in the same circumstances, and possessing the same knowledge as the defendant officer(s) could have believed that probable cause existed to arrest. <u>Scarborough</u>, <u>supra</u>, 245 F.3d at 1302. In making the determination whether arguable probable cause exists, the Court must apply an objective standard, asking whether the officer's actions are reasonable, regardless of the officer's underlying intent or motivation. <u>Vaughn v. Cox</u>, 264 F.3d 1027, 1036 (11th Cir. 2001); <u>Montoute v. Carr</u>, 114 F.3d 181, 184 (11th Cir. 1997). Arguable probable cause does not require an arresting officer to prove every element of a crime or to obtain a confession before making an arrest, because to do so would negate the concept of probable cause and transform officers into prosecutors. <u>Scarborough</u>, at 1302-03.

<u>Law Relating to Claims of Malicious Prosecution</u>

The Courts have held that when evidence shows that where

arresting officers after conducting a continuing investigation have turned over all relevant information to State Attorney, and the evidence further shows that the arresting officers neither made the decision whether or not to prosecute the suspect, nor acted in such a way as to improperly influence the decision of the State Attorney in that regard, then the arresting officers are not proper targets of a claim of malicious prosecution. See Eubanks v. Gerwen, 40 F.3d 1157, 1160-61 (11th Cir. 1994). Allegations of malicious prosecution, however, including allegations that a police officer knowingly made false statements to obtain an arrest warrant, can constitute a violation of the Fourth Amendment. The Eleventh Circuit noted in Whiting v. Traylor, 85 F.3d 581, 584 (11th Cir. 1996): "[L]abeling . . . a section 1983 claim as one for a 'malicious prosecution' can be a shorthand way of describing a kind of legitimate section 1983 claim: the kind of claim where the plaintiff, as part of the commencement of a criminal proceeding, has been unlawfully and forcibly restrained in violation of the Fourth Amendment and injuries, due to that seizure, follow as the prosecution goes ahead." Cf. U.S. Steel, LLC v. Tieco, Inc., 261 F.3d 1275, 1290 (11th Cir. 2001). The Whiting Court also noted that "we think referring to a federal 'right' to be free from malicious prosecution is actually a description of the right to be free from an unlawful seizure which is part of a prosecution." Whiting at 584 n.4.

To establish a §1983 claim for malicious prosecution, the plaintiff must prove both the elements required under state law for a common law tort of malicious prosecution, and violation of his Fourth Amendment right to be free from unreasonable seizures. Kingsland v. City of Miami, 382, F.3d 1220, 1234 (11th Cir. 2004); Wood v. Kesler, 323 F.3d 872, 881 (11th Cir.), cert. denied, 540 U.S. 879, 124 S.Ct. 298, 157 L.Ed.2d 143 (2003) (citing Uboh v.

9

Reno, 141 F.3d 1000, 1002-04 (11th Cir.1998); Whiting v. Traylor, 85 F.3d 581, 584-86 (11th Cir.1996); and Kelly v. Curtis, 21 F.3d 1544, 1553-55 (11th Cir. 1994)). As for the elements of a tort under Florida law, the plaintiff must establish each of six elements to support a claim of malicious prosecution: (1) institution of an original judicial proceeding against the plaintiff; (2) the defendant was the legal cause of the original proceeding; (3) termination of the proceeding in favor of the accused/plaintiff; (4) absence of probable cause for the proceeding; (5) malice on the part of the defendant; and (6) the plaintiff suffered damages as a result of the original proceeding. See Kingsland v. City of Miami, 382, F.3d 1220, 1234 (11th Cir. 2004) (citing Durkin v. Davis, 814 So.2d 1246, 1248 (Fla. 2d DCA 2002)).

## Law Relating to a Brady[1] Violation

In Brady v. Maryland, 373 U.S. 83 (1963), the Supreme Court established three criteria a criminal defendant must prove in order to establish a violation of due process resulting from the prosecution's withholding of evidence. Specifically, the defendant alleging a Brady violation must demonstrate (1) that the prosecution suppressed evidence, (2) that the evidence suppressed was favorable to the defendant or exculpatory, and (3) that the evidence suppressed was material. United States v. Severdija, 790 F.2d 1556, 1558 (11th Cir. 1986). Evidence is material only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. United States v. Alzate, 47 F.3d 1103, 1109-1110 (11th Cir. 1995), quoting, United States v. Bagley, 473 U.S. 667,

---

[1] Brady v. Maryland, 373 U.S. 83 (1963).

682 (1985); <u>United States v. Stewart</u>, 820 F.2d 370, 374 (11th Cir. 1987)(same).

A former criminal defendant who was denied his due process right to a fair trial as a result of withholding of exculpatory evidence may have a due process claim for money damages against a police officer under §1983. <u>See</u> <u>Porter v. White</u>, 483 F.3d 1294 (11th Cir. 2007); <u>McMillian v. Johnson</u>, 88 F.3d 1554 (11th Cir. 1996)(under §1983, a plaintiff may assert a due process claim for money damages against a police officer). To prevail in a §1983 claim, the plaintiff must show, in addition to showing breach and injury, that the state official named as defendant caused the constitutional deprivation. <u>Id.</u> To establish the requisite affirmative causal connection between the defendant in a civil rights action and alleged <u>Brady</u> violation, the plaintiff must show both that the official withheld exculpatory evidence and that the prosecution did not obtain said evidence from any other source. <u>Id.</u> However, negligence or inadvertence on behalf of the law enforcement officer in failing to turn over <u>Brady</u> material to the prosecution, which in turn causes the defendant to be convicted at trial that does not meet the fairness requirements imposed by the Due Process Clause, does not amount to "deprivation" in a constitutional sense and cannot therefore provide the basis for liability in a §1983 action seeking compensation for loss of liberty occasioned by a <u>Brady</u> violation. <u>Id.</u> Accordingly, a negligent act or omission does not provide a basis for liability in a §1983 action seeking compensatory damages for a loss of liberty as a result of a <u>Brady</u> violation.

<u>Discussion</u>

The Defendants argue, in pertinent part, that they are entitled to summary disposition of the complaint because the

11

pleadings, affidavits, and documents demonstrate that there are no genuine issues as to any material facts and, therefore the Defendants are entitled to a judgment as a matter of law. (DE#s60,61,62). Moreover, each defendant asserts entitlement to qualified immunity. (Id.).

**A.    Defendant Vershel**

Versel's affidavit (DE#60-1,Ex.A) reveals as follows. On May 25, 2007, while on routine patrol, he responded to a dispatched call involving two vehicles, a Road Ranger tow truck and a Pontiac owned by Barber on northbound State Road 9 (Interstate 95) in Broward County.

Upon his initial contact with Barber, Barber sat in the driver's seat of his vehicle, without the presence of anyone else therein. At that moment, Vershel spoke with Barber and smelled a strong odor of an unknown alcoholic beverage emitting from his breath and person. Vershel then requested Barber for his driver's license and vehicle information and instructed him to exit the vehicle.

During this time, Vershel was approached by the driver of another vehicle, Robert Weisz, who informed Vershel a vehicle with the same description and license plate number as Barber's vehicle struck his car about one half mile south of the crash site with the Road Ranger tow truck. Vershel then observed the damage of Weisz's vehicle and matched the damage to Barber's vehicle.

Vershel further observed that while Barber exited his vehicle, Barber had difficulty opening the door and stumbled out of the vehicle. At that point, Vershel advised Barber that he was conducting a criminal investigation for DUI and Barber confirmed he

understood this fact and voiced his understanding. At Vershel's request, Barber agreed to perform some voluntary roadside field sobriety exercises and confirmed he did not suffer from sickness, broken bones, diabetes or epilepsy.

All during this time, Vershel continued to smell a strong odor of an unknown alcoholic beverage emitting from Barber and observed Barber's eyes were bloodshot, watery and glassy.

At Vershel's request, Barber performed three field sobriety exercises, all which were poorly performed. In the first exercise, Horizontal-Gaze-Nystagmus, Vershel observed equal tracking of Barber's eyes with equal pupils; however Barber lacked smooth pursuit in both eyes. Moreover, Vershel observed distinct and sustained Nystagmus at maximum deviation in both eyes as well as Barber followed Vershel's pen with his head despite being instructed several times to do so only with his eyes. During this time, Barber swayed side to side in one to two inch circular motions.

The second exercise, Walk and Turn, Barber took seven steps in the first pass and missed the line on steps 3, 4 and 6, missing heel-to-toe on all steps more than ten inches. Barber raised his arms to shoulder height on all steps. On the second pass, Barber took eight steps missing the line on steps 2, 4, and 7 as well as, again, missing the heel-to-toe on all steps more than ten inches.

The third exercise was the One Leg Stand, wherein Barber attempted to use his left leg to perform the exercise; however the exercise was stopped when Barber nearly fell to the ground attempting to perform the exercise.

13

Accordingly, based on his observations, an assessment of the two crashes, the smell of an unknown alcoholic beverage, Barber's bloodshot, watery and glassy eyes and performance on the field sobriety exercises, Vershel determined there was sufficient basis to place Barber under arrest for DUI.

Barber was then placed in Vershel's patrol car, transported him to the Broward County Breath Alcohol Testing (BAT) Unit. While at the BAT, Barber stated he had consumed one drink and one beer. (See also DE#60-1,Ex.F; Ex.E:39). While there, Barber performed additional sobriety exercises wherein he again performed poorly. Vershel observed Barber sway during the Balance Test, take large steps in the Walk and Turn and failed to follow instructions in the Finger to Nose Test, including using the wrong arm each time, despite being shown and instructed otherwise. (See id.).

Following Vershel's performance on the exercises, BAT Technician Botero attempted three times to take a breath-alcohol sample from Barber, however, he was unable to register the proper volume of 210 liters of breath. Notwithstanding, although low in volume, Barber's breath results were 0.140, 0.102, and 0.169; all well over the legal limit. (See also DE#60-1,Exs.B,D:18-19,84,F,G).

Barber was then read his Miranda rights and placed into custody at the Broward County Jail. (See also DE#60-1,Ex.B). He was subsequently acquitted on the charges of the DUI and DUI property damage, found guilty by a jury verdict of leaving the scene of an accident and sentenced to sixty (60) days in jail. (DE#60-1,Ex.E:114-118).

In further support of his summary judgment motion, Vershel provided the affidavit of Robert Weisz (DE#60-1,Ex.C), which

reveals as follows.  On May 25, 2007, at approximately 10:00 p.m., Weisz drove his vehicle in Broward County, north bound on Interstate 95 in a center lane when the vehicle located on his passenger side moved into his lane and clipped the front of his vehicle, causing significant damage to the front right/passenger side of his vehicle.

After striking Weisz's vehicle, the other vehicle did not stop and instead, proceeded north bound on Interstate 95. Weisz made a visual note of the other vehicle's appearance, a Pontiac, and the license place number as Florida Tag 114HIJ. Weisz then pulled to the side of the highway to assess the damage to his vehicle and contacted the police. He called 911 and advised the operator that his vehicle had been struck by another vehicle which failed to stop. He then provided the operator with a description of the vehicle and its license plate number.

While on the phone with the 911 operator waiting for the police to arrive, Weisz was advised by the operator that a vehicle meeting the description of the one that hit his was reported to be involved in another accident about a mile north on Interstate 95 and that he should proceed to that crash site to meet the police.

Weisz then entered his vehicle, proceeded north and arrived at the scene of another accident where the front of the vehicle that hit his, the Pontiac, was crashed into the back of a Road Ranger tow truck on the roadside. At the crash site, Weisz met with a Florida Highway Patrol Trooper, who advised him to remain in his vehicle for safety.

From his vehicle, Weisz observed the driver of the Pontiac, Barber, and witnessed him having difficulty walking and keeping his

15

balance; he also seemed to be talking to himself and having strange outbursts. Weisz also witnessed the trooper having difficulty placing this driver into the backseat of the trooper's patrol car as the driver could barely walk.

In response to the Defendants' motion for summary judgment, Barber argues that no probable cause existed for his arrest, seizure and continued detention as determined and found by a jury when it rendered its verdict of not guilty of all DUI charges. (DE#73:3). Moreover, he argues he was never identified as the driver of the vehicle involved in the underlying offense. (Id.).

In further support of his argument, Barber provides a self-authored affidavit stating that he was involved in a crash in his vehicle while driving northbound on Interstate 95 wherein his vehicle was rear ended causing it to fishtail into a Road Ranger. (DE#73:7). After he exited his vehicle to see if anyone was injured, he encountered the driver of the Road Ranger tow truck, who Barber questioned as to why he was parked on the shoulder without lights or markers; however the unknown driver remained silent when questioned. (Id.). Then, upon returning to his vehicle, Barber realized the driver of his vehicle and friend, exited Barber's vehicle and began walking on the shoulder when Trooper Vershel arrived at the scene. (Id.:8). While attempting to convey the events of the crash, Vershel requested Barber for his driver's license, insurance and registration, which Barber provided. (Id.). Vershel returned to his vehicle and upon Vershel's return, without speaking to any other drivers or witnesses, he advised Barber that he was under arrest for DUI, handcuffed Barber and placed him in the back seat of the trooper vehicle. (Id.).

According to Barber, Vershel failed to video or photograph the

16

road side sobriety exercises or document the damages to the vehicles at the scene. (DE#73:8). Moreover, Barber was neither informed of his <u>Miranda</u> rights nor of the implied consent law or was he given the opportunity to request the dashboard camera from the trooper's vehicle. (<u>Id.</u>). Barber's vehicle was then towed from the scene more than 50 miles away by the trooper's agent. (<u>Id.</u>).

Ultimately, Barber concludes that Vershel "overreacted" upon learning that Barber was on parole supervision when the accident occurred, thereby falsifying reports and fabricating facts to manufacture probable cause for his arrest and the continuance of his detainment. (DE#73:9).

i.        <u>Falsifying/Fabricating Official Reports to Manufacture Probable Cause</u>

a.  *False Arrest:*

As previously discussed, the existence of probable cause at the time of the arrest constitutes an absolute bar to a section 1983 action for false arrest. <u>Kingsland v. City of Miami</u>, 382 F.3d 1220 (11th Cir. 2004).

Aside from a self-authored affidavit, Barber provides no other support for his argument that probable cause did not exist to justify his arrest and prosecution. Moreover, the exhibits Barber previously provided in support of his Motion for Summary Judgment (DE#s41,42), which included the court charging documents, the court order showing suppression of the breath results and documents reflecting he was acquitted for three of the four charges by the jury, are silent on probable cause.

17

However, Vershel's exhibits in support of his summary judgment motion clearly reveals that probable cause or at least, arguable probable cause existed. Vershel's probable cause affidavit, as found in the arrest form, dated May 25, 2007 at 10:38 p.m., states that upon his arrival at the scene of the accident, he observed the Road Ranger tow truck parked on the east paved shoulder with rear end damage. (DE#60-1,Ex.B). He then observed Barber's vehicle with front end damage. (Id.). He met with Barber who sat in the driver seat of the vehicle and as Vershel spoke with Barber, Vershel smelled a strong order of an alcoholic beverage emitting from his breath and person. (Id.). After observing Barber's difficulty exiting his own vehicle, Vershel advised Barber that he was concluding his crash investigation and starting a criminal investigation for DUI to which Barber orally acknowledgement. (Id.). Vershel then requested Barber to perform some voluntary field sobriety exercises, which he agreed to. (Id.). Vershel again noted he could smell a strong order of alcohol emitting from Barber's breath as he spoke, along with bloodshot, watery, glassy eyes. (Id.). After poorly performing the three exercises, Horizontal-Gaze-Nystagmus, Walk and Turn, and the One Leg Stand, the exercises were stopped and at that point, Vershel placed Barber under arrest for DUI. (Id.). Barber was placed in the right rear seat of the patrol vehicle and transported to the Broward County BAT Unit. (Id.). Barber was placed on video at the BAT and read the Florida Implied Consent. (Id.). After three readings were taken, Barber's Miranda rights were read on video at the BAT Unit and he was subsequently taken to Broward County Jail. (Id.).

Moreover, the DUI/Alcohol Influence Report completed by Defendant Botero, explains the results of Barber's performance test. (DE#62-3,Ex.C) . As for the Balance Test, Botero noted Barber was swaying. (Id.). With respect to the Walk and Turn Test, it was

noted he took five steps forward, four steps back with huge gaps. (Id.). The report further indicates Barber used the wrong arm when performing the Finger to Nose test, despite having been explained how to properly perform the exam. Finally, the report indicates he had a poor ability to understand instructions. (Id.).

Finally, the Breath Alcohol Test Affidavit, which was subsequently suppressed for purposes of trial, reflects that although Barber's three attempts resulted in "volume not met," with breath volume provided, it still appears Barber's alcohol level was above the legal limit.

Notwithstanding the foregoing, Barber fails to provide any affidavits, depositions, or other relevant evidence to rebut Vershel's probable cause affidavit, the DUI/Alcohol Influence Report, Breath Alcohol Test Affidavit, along with Weisz's affidavit indicating he observed Barber having difficulty walking, keeping his balance, talking to himself and having strange outbursts. He does not provide affidavits of the alleged individuals whom he states were with him in his vehicle on the night of the incident, including the alleged driver of his vehicle when the accident occurred. He also does not provide any affidavits of those other witnesses and drivers also present at the time and place of the crash. He fails to provide a police report of the initial crash wherein he was allegedly "fishtailed." Aside from his self-serving allegations that probable cause did not exist, Barber does not so much bring forth any evidence to rebut Vershel's motion. In the absence of showing that the essential element of probable cause has been satisfied, it is apparent that summary judgment should be granted as to Vershel.

It is therefore clear, based on the foregoing, that on the

19

§1983 claims against him, Vershel is entitled to qualified immunity, which under appropriate circumstances serves to insulate governmental officials from personal liability for actions taken pursuant to their discretionary authority. <u>Saucier v. Katz</u>, 533 U.S. 194 (2001); <u>Harlow v. Fitzgerald</u>, 457 U.S. 800 (1982); <u>Flores v. Satz</u>, 137 F.3d 1275 (11th Cir. 1998); <u>Foy v. Holston</u>, 94 F.3d 1528 (11th Cir. 1996).

b.   *Malicious Prosecution:*

Evident from the foregoing, probable cause or at a minimum, arguable probable cause existed, thus barring Barber's claims for malicious prosecution, as a matter of law, against Vershel. Moreover, Barber fails to proffer any evidence which indicates that Vershel acted with malice.

In the absence of showing that the essential elements of probable cause or malice existed, it is apparent that summary judgment should be granted as to defendant Vershel with respect to the malicious prosecution claim. Based on the foregoing, Vershel, acting under color of state law and within the scope of his employment as a Trooper with the Florida Highway Patrol, as well as within his discretionary authority, is entitled to qualified immunity. <u>Saucier v. Katz</u>, 533 U.S. 194 (2001); <u>Harlow v. Fitzgerald</u>, 457 U.S. 800 (1982); <u>Flores v. Satz</u>, 137 F.3d 1275 (11th Cir. 1998); <u>Foy v. Holston</u>, 94 F.3d 1528 (11th Cir. 1996).

ii.        <u>Brady violation</u>

As discussed above, Barber must produce sufficient evidence to create a trial issue of fact with regard to Vershel's culpability. Moreover, Barber must show an affirmative causal

20

connection between Vershel's conduct and the denial of due process occasioned by the Brady violation.

Liberally construing Barber's complaint, it appears he raises a third issue, Vershel willfully, intentionally, and knowingly neglected his responsibility and duty of care when the trooper failed to secure and preserve Barber's vehicle which was exculpatory trial evidence. (DE#1:3(d)).

In support of his argument, Barber's self-authored affidavit merely states that outside of his presence, his vehicle was towed more than 50 miles by Vershel's agent from the scene of the accident. (DE#73,Ex.1:2). He further alleges Vershel failed to preserve the evidence from his vehicle gathered in his criminal investigation that would have shown rear-end damage to his vehicle. (Id.).

If true, that the damage to his vehicle was exculpatory evidence, Barber has failed to show any evidence of ill-will or motive on the part of Vershel. See Porter, 483 F.3d at 1311. As such, there is absolutely no evidence from which a jury could reasonably infer intent to withhold, recklessness, or anything more than mere negligence. Id. Because Barber is unable to show that his vehicle failed to reach the State Attorney's Office as a consequence of some more than-negligent act or omission on the part of Vershel, this claim is without merit. Barber has made no showing of a causal connection between Vershel and the failure to preserve exculpatory evidence as alleged by the plaintiff. In the absence of a showing that the essential element of causation has been satisfied, it is apparent that summary judgment should be granted as to Vershel. Based on the foregoing, Vershel, acting under color of state law and within the scope of his employment as a Trooper

with the Florida Highway Patrol, as well as within his discretionary authority, is entitled to qualified immunity. <u>Saucier v. Katz</u>, 533 U.S. 194 (2001); <u>Harlow v. Fitzgerald</u>, 457 U.S. 800 (1982); <u>Flores v. Satz</u>, 137 F.3d 1275 (11th Cir. 1998); <u>Foy v. Holston</u>, 94 F.3d 1528 (11th Cir. 1996).

**B.    Defendants Botero & Nanz**

Botero attaches a transcript of testimony she presented during a suppression hearing conducted prior to Barber's criminal trial. (DE#62,Ex.D). Botero testified that she attempted to administer the breath alcohol test several times, but Barber would not and/or refused to blow in the Intoxilyzer properly, which resulted in "volume not met" results. (DE#62-4,Ex.D:18-19,33). Botero categorized Barber's action as a refusal to take the test. (Id.:19).

Defendant Nanz also provided testimony during the suppression hearing, wherein she testified that she inspected the Intoxilyzer on May 11, 2007 and found it to be in compliance, as it contained a new dry gas cylinder with an expiration date of November 20, 2008. (DE#62-4,Ex.D:56-60). Subsequent to the incident involving Barber, Nanz again examined the machine and again found it to be in compliance. (Id.:53).

In his response to the Defendants' motions for summary judgment, Barber argues Botero and Nanz seized/arrested him when they conducted DUI testing using unauthorized instruments contrary to general orders or FDLE standards. (DE#73:3). Moreover, he argues Botero and Nanz are law enforcement certified technicians who intentionally, knowingly and willfully failed to comply with general orders and fabricated reports of Barber's arrival at the

BAT Unit. (Id.). Likewise, due to results of the unapproved breath instruments, Botero and Nanz caused/compelled Vershel to arrest Barber. (Id.). Accordingly, Botero and Nanz acted without probable cause. (Id.:4).

In Barber's affidavit in support of his response, he alleges Nanz admitted that she "'messed up'" and failed to approve the instrument's use on two separate occasions. (DE#73:9). He further argues Botero and Nanz also "overreacted" when they learned he was on parole supervision at the time of the offense and therefore, they falsified reports, fabricated facts to create probable cause for his arrest and continued his detainment. (Id.).

Barber's §1983 claims for false arrest and malicious prosecution against Botero and Nanz are unusual, in that, unlike most malicious prosecution and false arrest claims, they are asserted against defendants who were not arresting officers. However, the aforementioned claims may be brought against individuals other than the arresting officers. See Shattuck v. Town of Stratford, 233 F.Supp.2d 301 (D.CT. 2002).

i. Falsifying/Fabricating Official Reports to Manufacture Probable Cause

a. False Arrest:

As the evidence clearly shows, upon Barber's arrival at the BAT Unit, Vershel had already arrested him. (See DE#62-5,Ex.E31-33). Moreover, any blood/alcohol test or sobriety exercises of which Barber complains did not create the probable cause that resulted in his arrest, as it is unequivocally clear that he was arrested prior to his arrival at the BAT Unit. Therefore, neither

Botero nor Nanz's actions caused or compelled Barber's arrest.

Likewise, no evidence has been provided to indicate that Nanz interacted with Barber at any time; she did not administer any tests upon Barber, but only inspected the equipment used at the BAT Unit at some time other than when Barber's exercises were conducted.

Moreover, neither Botero nor Nanz are law enforcement officers, but rather DUI technicians employed by the Broward County Sheriff's Office, certified by the State of Florida and therefore do not have the authority to arrest or unarrest an individual.

Ordinarily, a person providing information to the police is shielded from liability on a false arrest or malicious prosecution claim by the arresting officer's independent decision to make an arrest, there are situations in which those reporting criminal activity to the authorities may be liable under these circumstances; to wit: if the individual "instigated" the arrest or "commenced the proceedings." Shattuck, 233 F.Supp.2d at 313-14. However, Barber was already seized for Fourth Amendment purposes and Botero's testing in Vershel's presence and Nanz's inspection of the equipment, did not create any separate actionable seizure that did not exist at the time of Barber's arrival.

Notwithstanding, even if Botero's and Nanz's actions could have subjected Barber to a separate actionable seizure under the Fourth Amendment, so long as probable cause existed for **any offense**, it is irrelevant whether Vershel had probable cause for the crime or crimes for which Barber was ultimately charged for or prosecuted. United States v. Shepard, 160 Fed. Appx. 489, 91 (7th Cir. 2005); citing Wren v. United States, 517 U.S. 806, 813

(1996); see also Ankele v. Hambrick, 286 F. Supp.2d 485, 491 (E.D. Pa. 2003)("Probable cause is not needed on each and every offense that could be charged; probable cause is only needed for one of the offenses that may be charged under the circumstances."). As explained supra, probable cause existed, or at the very least arguable probable cause existed for Barber's arrest.

In the absence of showing that the essential element of probable cause existed, it is apparent that summary judgment should be granted as to defendants Botero and Nanz with respect to the false arrest claim.

At the time of Barber's arrest, Botero and Nanz, although not sworn-law enforcement officers, were exercising their discretionary authority under color of state law and within the scope of their employment as certified DUI technician and inspector, employed by the BSO, as well as within their discretionary authority.

It is therefore clear, based on the foregoing, that on the §1983 claims against them, the defendants Botero and Nanz are entitled to qualified immunity, which under appropriate circumstances serves to insulate governmental officials from personal liability for actions taken pursuant to their discretionary authority. Saucier v. Katz, 533 U.S. 194 (2001); Harlow v. Fitzgerald, 457 U.S. 800 (1982); Flores v. Satz, 137 F.3d 1275 (11th Cir. 1998); Foy v. Holston, 94 F.3d 1528 (11th Cir. 1996).

b.   Malicious Prosecution:

Evident from the foregoing, probable cause or at a minimum, arguable probable cause existed, thus barring Barber's claims for

malicious prosecution, as a matter of law, against Botero and Nanz.

Moreover, Barber fails to proffer any evidence which indicates that either Botero or Nanz acted with malice or that either of them were the legal cause for his proceeding. Rather, Barber's actions prior to arriving at the BAT Unit for further testing were the legal cause of the proceedings and gave rise to the probable cause which led Vershel to his arrest.

In the absence of showing that the essential elements of probable cause, malice or that the defendants were the legal cause for his proceeding exist, it is apparent that summary judgment should be granted as to defendants Botero and Nanz with respect to the malicious prosecution claim. Furthermore, based on the foregoing, defendants Botero and Nanz, acting under color of state law and within the scope of their employment as certified DUI technician and inspector, employed by the BSO, as well as within their discretionary authority are entitled to qualified immunity. Saucier v. Katz, 533 U.S. 194 (2001); Harlow v. Fitzgerald, 457 U.S. 800 (1982); Flores v. Satz, 137 F.3d 1275 (11th Cir. 1998); Foy v. Holston, 94 F.3d 1528 (11th Cir. 1996).

### ii.    Duty of Care:

Liberally construing Barber's claim under Haines v. Kerner, 404 U.S. 419 (1972), it appears two additional claims, against Botero and Nanz, respectively, warrant review.

Barber asserts Botero neglected her responsibility and duty of care as a certified breath test operator to properly administer a video DUI examination on approved instrument in accordance with FDLE standards. (DE#1:3(f)).

26

Barber further asserts Nanz neglected her responsibility and duty of care as a certified agency inspector to properly inspect breath test instrument for approved testing in accordance with FDLE standards expiration date. (DE#1:3(g)).

In support of the foregoing claims, Barber asserts that upon completion of his road side exercises, he asked what the results were, which one of the defendants; although Barber does not identify the defendant he references, it appears he means Botero, responded "there is no pass or fail" exercises. (DE#73,Ex.1:3). Moreover, he alleges he was given a breath test on an "unapproved" instrument resulting in an unreliable reading, which led to the probable cause which substantiated his arrest. (Id.).

Notwithstanding Barber's arguments, because "arguable probable cause" is determined by the facts and circumstances present at the time of the arrest, Saucier v. Katz, 533 U.S. 194 (2001), the results of his exercises and breath test at the BAT Unit, along with instruments used to administer said tests, are irrelevant to the question of whether a Fourth Amendment violation occurred when Vershel arrested Barber on the DUI charges. Brienza v. Gee, 307 Fed.Appx 352 (11th Cir. 2009).

It is apparent that summary judgment should be granted as to defendants Botero and Nanz with respect to this claim. Furthermore, based on the foregoing, defendants Botero and Nanz, acting under color of state law and within the scope of their employment as certified DUI technician and inspector, employed by the BSO, as well as within their discretionary authority are entitled to qualified immunity. Saucier v. Katz, 533 U.S. 194 (2001); Harlow v. Fitzgerald, 457 U.S. 800 (1982); Flores v. Satz,

137 F.3d 1275 (11th Cir. 1998); <u>Foy v. Holston</u>, 94 F.3d 1528 (11th Cir. 1996).

Finally, to the extent the Barber is suing defendants Botero and Nanz in their official capacities, his claims against the defendants are in legal effect claims against the BSO. In order to prevail on any official capacity claim, Barber must have demonstrated that there existed a policy or custom which was a moving force behind the deprivation that caused his injury. <u>See Monell v. Dept. of Social Services</u>, 436 U.S. 658 (1978); <u>Gilmore v. City of Atlanta</u>, 774 F.2d 1495, 1504 n.10 (11th Cir. 1986); <u>Depew v. City of St. Mary's</u>, 787 F.2d 1496, 1499 (11th Cir. 1986). In this case, the facts of record do not indicate that there was official policy on the part of the BSO to violate his constitutional rights with regard to sobriety tests/exercises. Barber has not demonstrated that BSO was aware of defects in inspection, certification or use of intoxilyzer tests, posing a risk of harm to him, tolerated over time, which can be said to demonstrate the existence of an unofficial policy, attributable to BSO, of deliberate indifference to individuals rights of having a valid and reliable intoxilyzer test performed.

<u>Conclusion</u>

Based on the foregoing, it is therefore recommended that the defendants' motions for summary judgment (DEs#60,61) be granted and this case closed.

Objections to this report may be filed with the Chief Judge within fourteen days of receipt of a copy of the report.

Signed this 4th day of August, 2010.

_____
UNITED STATES MAGISTRATE JUDGE

cc:  Larry James Barber, <u>Pro Se</u>
     DC# 047957
     Okeechobee Correctional Institution
     3420 N.E. 168th Street
     Okeechobee, FL 34972

     Kiernan P. Moylan, Esq.
     Attorney General's Office
     Civil Litigation Division
     110 S.E. 6th Street
     10th Floor
     Fort Lauderdale, FL 33301-5000
     (counsel for Steven M. Vershel)

     Alain E. Boileau, Esq.
     Adorno & Yoss, LLP
     888 S.E. 3rd Avenue
     Suite 500
     Fort Lauderdale, FL 33316
     (counsel for Angela Botero & Patricia Nanz)

     Robert Hunt Schwartz, Esq.
     Adorno & Yoss, LLP
     888 S.E. 3rd Avenue
     Suite 500
     Fort Lauderdale, FL 33316
     (counsel for Angela Botero & Patricia Nanz)